[Schuylkill and Susquehanna Navigation *v.* Diffebach et al.]

There is no objection made. to what the jury have done on the ground of substantial injustice, and the exception taken appears captious; wherefore, let the inquisitions be confirmed, and judgments entered thereon, agreeably to the law, unless other cause be shewn.

Mr. W. M. Smith, *pro quer.*

Messrs. Montgomery and J. B. M'Kean, *pro def.*

# Respublica *against* the Gaoler of Philadelphia county.

Free negroes or mulattoes can be bound here as servants until 21 years of age, but no longer; but those who have been bound in other states and brought into this state, may be compellable to serve until 28 years old, according to the terms of their indentures.

To a *habeas corpus*, under the act of 1785, returnable forthwith, to bring before the court the body of negro Robert, Mrs. Mary Weed the gaoler, made return, that the said negro Robert was detained by her under a commitment of Hilary Baker, esq. one of the aldermen of the city of Philadelphia, as the runaway servant of Anne Tharp, the widow of William Tharp, late of the said city, deceased.

It was admitted, that he was brought into the state in 1779, as a slave for life, was not registered according to the directions of the act "for the gradual abolition of slavery," passed on the 1st March 1780, and had lived with the said William Tharp; that on the 17th August 1784, he was bound by indenture by the guardians of the poor of the said city, to the said William, as a servant, to serve him from the age of fourteen years to the age of twenty-eight years, and that the said negro was now of full age.

*Messrs. Lewis and Coxe for the negro contended, [*369 that the indenture was not good in law, and that his servitude expired when he arrived at the age of twenty-one years. By the 5th and 10th sections of the abolition act he became free, not being registered within the time prescribed therein, (Dall. 472 to 479) and therefore could only be bound as a white person, to wit, until twenty-one years of age; if a female, until the age of eighteen. The 4th section of the act respects negro and mulatto children, born within the state after the passing of the law, but in no wise relates to persons then born and not registered. It is true, the expressions in the 13th section are general, but it must be considered that the words are in the negative, and not affirmative. And they must be explained by the preceding section, which confines them to the cases of negroes and mulattos introduced into the state, under covenant to serve for long and unreasonable terms of years.

[Respublica *v.* Gaoler of Philadelphia.]

› *Per cur.* We are unanimously of opinion, that the clear intention of the legislature, shewn in the 12th section of the abolition act, will controul the operation of the general words used in the succeeding clause; and that in the cases of free negroes, or mulattos, (for want of being registered by manumission, or otherwise,) born either before, or after the passing of the act, they can be only bound until twenty-one years of age. The 13th section was enacted to prevent the evils which would result from attempts to evade the spirit of the law, by importing negro or mulatto servants into the state, for long terms of years. But negroes or mulattos bound in other states, to serve until twenty-eight years old, whose indentures have been executed to liberate them from a longer servitude, or from slavery, and brought into this state, may be holden as servants according to their indentures, under the express words and meaning of the act. And such, for many years, has been the uniform construction of the law.

Negro Robert must therefore be discharged.

Cited in 1 Watts, 159. Obsolete since the Emancipation of slaves.

*370] *Respublica *against* James Burns, esq.

Information lies against a justice of the peace, for taking the recognizance of a person charged with an assault and battery, himself in 30s. and two sureties in 15s. each.

ONE John Montgomery, jun. attorney at law, of Carlisle, had been indicted in Mifflin county, for an assault and battery under very aggravated circumstances, and escaped into Maryland. The governor of this state had demanded him from the executive authority of Maryland, under the 4th article of the constitution of the United States, and he was sent up accordingly to Mifflin county. He appeared before the defendant, a justice of the peace of the said county, and entered before him into recognizance, himself in the sum of 30s. and two sureties in 15s. each, conditioned for his appearance at the then next Mifflin Quarter Sessions of the peace, to answer the indictment and abide the judgment of the court in the premises. And Burns gave Montgomery a certificate, that he had entered into recognizance with sufficient sureties to appear and answer: whereupon Montgomery was discharged.

A rule had been granted to shew cause why an information should not be filed against the defendant, for this misdemeanor.

Mr. Morgan now shewed cause and contended, that the defendant had not been influenced by corrupt motives. He read the affidavits of George Wilson and John Culbertson, the two sureties of Montgomery, to prove it. The former swore,