## Commonwealth ex rel. Hall *against* Robinson.

An indenture executed in Pennsylvania, by a slave from the District of Columbia, by which he bound himself to serve for seven years in consideration of manumission, is void; although made in pursuance of a parol agreement entered into in the District of Columbia.

HABEAS CORPUS to *William Robinson, Jun.* upon the relation of *Hannah Hall* for her son *F. Hall.*

The facts of this case were the same substantially as those given in the preceding case of the *Commonwealth* v. *Cook,* with this additional fact, that the indenture was executed in pursuance of an agreement entered into by the slave, with consent of his mother, before they left the District of Columbia,

The cause was argued by

*W. W. Fetterman,* for relator.
*Colwell,* for respondent.

The opinion of the Court was delivered by

ROGERS, J.—This presents the case of a person bound to servitude in the state of Pennsylvania, in pursuance of an agreement for that purpose, made in the District of Columbia, and in that respect it differs from the *Commonwealth* v. *Cook,* decided at this term. In the case referred to, the court declined giving any opinion, whether if the agreement had been clearly proved to have been made out of the state, the relator would be entitled to be discharged. To the *habeas corpus,* the respondent makes the following return, which has been fully proved by the evidence given on the part of the respondent. "*William Robinson, Jun.* in obedience, &c. respectfully returns, that he holds *Francis Hall* as his servant or apprentice, by virtue of an indenture entered into by the said *Francis Hall,* with the consent of his mother *Hannah Hall,* now *Hannah Butler,* with *Basil Williamson,* formerly of the city of Washington, but more lately of the city of Pittsburgh, whereby the said *Francis Hall* covenanted to serve the said *Basil Williamson,* until he, the said *Francis Hall,* should attain the age of twenty-eight years, viz. until July 1852; which indenture was executed in the said city, on the 18th of November 1830, in the presence and with the approbation of *C. H. Israel,* an alderman of the said city of Pittsburgh, in pursuance of a verbal agreement entered into between the said *Hannah Hall,* for herself and her son, the said *Francis Hall,* who was then —— years of age, and *Ellen Maria Williamson,* their mistress in the said city of Washington, while she, the said *Hannah,* and he, the said *Francis,* were

slaves, a few days previously to leaving the said city with a view to reside in Pittsburgh, and which agreement was made at the earnest solicitation of the said *Hannah Hall,* who was unwilling that herself and her children should be sold as slaves. The indenture before mentioned was made to *Basil Williamson,* in pursuance of an agreement to that effect, between the said *Ellen Maria Williamson,* her father the said *Basil Williamson,* and the said *Hannah Hall,* for herself and her children, and stated at large in the said indenture. The said indenture of servitude or apprenticeship of the said *Francis Hall* was informally assigned, some weeks since, to the said *William Robinson, Jun.* by *S. Caldwell,* as attorney in part of *Basil Williamson,* with the understanding that a formal indenture should be executed." Since the case of the *Commonwealth* v. *Cook,* so recently decided, it is not open to argument, that, independent of the penal agreement mentioned in the return, the relator must be discharged. It remains then for us to inquire, and our attention has been thus directed, whether that circumstance makes any difference; and we are of opinion that it does not. The preamble of the thirteenth section of the act of the 1st of March 1780, recites the mischief which the legislature intended to remedy. "And whereas attempts," says the preamble, "may be made to evade this act, by introducing into this state negroes and mulattoes, bound by covenant to serve for a long and unreasonable term of years, if the same be not prevented." "Therefore, no covenant of personal servitude, or apprenticeship whatsoever, shall be valid or binding, &c."

The evil which the legislature seems to have foreseen, was a binding without the limits of the state, for a considerable length of time, for the purpose of introducing them within the state. And this seems to have been the view which the supreme court took of the act in *Respublica* v. *Jailor of Philadelphia County,* 1 *Yeates* 368. This was the first case, after the passage of the act, which recognizes the validity of an indenture of a slave, in consideration of manumission. The court, in speaking of a binding out of the limits of the state, use the following language. "The thirteenth section was enacted to prevent the evils which would result from attempts to evade the spirit of the law, by importing negroes or mulatto servants into the state, for long terms of years. But negroes or mulattoes, bound in other states, to serve until twenty-eight years, whose indentures have been executed to liberate them from a longer servitude or from slavery, and *brought into the state,* may be holden as servants, according to their indenture, under the express words and meaning of the act." It must be observed, that this was the first case decided on the act, and may be regarded as in some measure a contemporaneous exposition of it. The words *bound in other states* and *brought into this state,* are in italics, which is some slight intimation, that the court considered these circumstances as essential to the validity of the contract. The spirit of the decision is this, that

[Commonwealth v. Robinson.]

the person bound, must be in a condition to receive an advantage from the contract; and this is the case of a slave or servant for a very long time, for whose benefit it is to exchange that condition, for the mitigated servitude recognized by the law of this state. It is on this principle that the binding of a slave, who has absconded, may be made within the state. It would be a useless ceremony to take the slave out of the state to make the indenture valid. *The Commonwealth* v. *Clements*, 6 *Binn.* 207.

The act also uses these terms, "*no covenant* of personal servitude or apprenticeship, shall be binding." When the legislature uses a legal term, it is supposed to be with a legal signification. A covenant is defined to be "the agreement or consent of two or more by deed, in writing, sealed and delivered, whereby either or one of the parties doth promise to the other, that something is done already, or shall be done afterwards." *Vide Jacob's Law Dict.* and *Sheppard's Touchstone.* Under the act of 1770, also, a binding of an apprentice must be by indenture. Without insisting on the danger of imposition, which would result from allowing a parol agreement to validate an indenture, we are of opinion, that to make the contract binding, it must be by indenture, as in the case of apprenticeship, or executed before the mulatto or negro is brought within the state. In adopting this rule, we impose no hardship on persons who may wish to introduce that class within the state. It is as easy to execute the indenture out, as in the state. It is presumed, that before they take a step of this kind they will inform themselves of the statutes of the state, and conform to the regulations which may be required.